IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NORTHWEST STEEL ERECTION CO., INC., a Nebraska corporation, | ) ) ) | 4:07CV3184 |
| Plaintiff, | ) ) | **MEMORANDUM** |
| v. | ) ) | **AND ORDER** |
| ZURICH AMERICAN INSURANCE COMPANY, an Illinois corporation, | ) ) ) ) | |
| Defendant. | ) | |

The defendant, Zurich American Insurance Company ("Zurich") has filed a motion to dismiss this diversity action pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion (filing 18) will be denied.[1]

The plaintiff, Northwest Steel Erection Co., Inc. ("Northwest"), seeks to obtain a declaration of its rights as an insured party under a builders risk policy issued by Zurich for a construction project in Iowa, and to recover damages for Zurich's alleged breach of contract in denying coverage.[2] Zurich argues that the action is barred by a 12-month limitations period contained in the policy, and also by its payment of a claim made by the policy's principal insured, McCarthy Building Companies, Inc. ("McCarthy").

---

[1] A previously filed motion to dismiss (filing 10), filed with reference to the plaintiff's original complaint, will be denied without prejudice, as moot.

[2] Northwest is a Nebraska corporation that has its principal place of business in Nebraska. (Amended Complaint (filing 17), ¶ 1.) Zurich is an Illinois corporation that has its principal place of business in Illinois. (*Id.*, ¶ 2.)

With respect to the limitations defense,[3] Zurich argues that Iowa law applies, and that contractual limitations provisions are given effect in Iowa, provided that the limitations period is reasonable. Northwest, on the other hand, argues that Nebraska law applies, and that contractual limitations provisions contravene Nebraska public policy; alternatively, Northwest argues that applying a 12-month limitations period under the circumstances of this case would be unreasonable or inequitable. I do not resolve these conflict-of-laws questions because I conclude that Zurich has failed to show that the policy provision upon which it relies actually establishes a limitations period.[4] The policy provision at issue (titled "Suit Against the Company") reads:

> No suit or action on this Policy for the recovery of any claim will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this Policy. Any action or proceeding against the Company for recovery of any loss under this policy will not be barred if commenced within (12) twelve months after the OCCURRENCE* becomes known to the Named Insured unless a longer period of time is provided by applicable statute.

(Amended Complaint (filing 17), Exhibit C, at 23-24 (¶ 25).)

Under the plain wording of the policy, an action *will not be barred* if brought within 12 months after the occurrence becomes known. Zurich's contention that this language supersedes the applicable statute of limitations, by providing that an action *will be barred* if not brought within 12 months of a known occurrence, is fallacious.[5]

---

[3] Zurich is wrong to disclaim the burden of proof on the limitations issue. *See Duchek v. Blue Cross & Blue Shield of Neb.*, 153 F.3d 648, 650 n. 2 (8th Cir. 1998) (characterizing contractual limitations period as affirmative defense).

[4] As will be discussed, there is a second policy provision that does appear to establish a 12-month limitations period, but Zurich does not purport to rely upon that provision. The wording of that provision also affects the choice-of-law analysis.

[5] Zurich's argument is a logical fallacy known as "denying the antecedent." (For example: If Queen Elizabeth is an American citizen, then she is a human being. Queen Elizabeth is not an American citizen. Therefore, she is not a human being.)

The concluding language, "unless a longer period of time is provided by applicable statute," is usually treated as a "conformity clause" that applies only when there is an express statutory prohibition against a contractual limitations period less than that prescribed by statute. *See, e.g., Graingrowers Warehouse Co. v. Central Nat. Ins. Co. of Omaha*, 711 F.Supp. 1040, 1045 (E.D.Wash. 1989). In other words, a general statute of limitations is not considered an "applicable statute" for purposes of such a clause. With one notable exception that I will discuss below, in every case that I have discovered involving a comparable policy provision, a limitations period is clearly imposed by the language that precedes the conformity clause. *See PPG Industries, Inc. v. American Home Assur. Co.*, 2007 WL 2350646, *2 (N.J.Super.Ct. App.Div. Aug. 20, 2007) ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve (12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute."); *Atwood v. St. Paul Fire and Marine Ins. Co.*, 845 N.E.2d 68, 70-71 (Ill.App. 2006) ("The Policy Limitations Period limits the time within which a lawsuit may be brought. In particular, it states that '[a]ny lawsuit to recover on a physical damage claim must begin within one year after the date on which the direct physical loss or damage occurred. If a state law provides you more time, we'll conform to that law.'"); *1515-1519 Lakeview Blvd. Condominium Ass'n v. State Farm Fire & Cas. Co.*, 2001 WL 244383, *3 (Wash.App. Mar. 12, 2001) ("No one may bring legal action against us under this insurance unless ... the action is brought within two years after the date on which the accidental direct physical loss occurred. But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply."); *United Technologies Automotive Sys., Inc. v. Affiliated FM Ins. Co.*, 725 N.E.2d 871, 872 (Ind.App. 2000) (same as *PPG*); *Salcedo v. John Hancock Mut. Life Ins. Co.*, 38 F.Supp.2d 37, 40-41 (D.Mass. 1998) ("No legal action or suit to recover on the Policy ... may be brought more than 3 years after the time [written proof of loss] must be furnished. But, if [this] time limit is less than permitted by state law where you reside when the loss occurs, that limit is extended to agree with the smallest limit the law

3

of that state allows."); *Wabash Power Equip. Co. v. International Ins. Co.*, 540 N.E.2d 960, 962 (Ill.App. 1989) ("No suit on this policy shall be valid unless the insured has complied with all policy requirements and the suit is commenced within one (1) year (unless a longer period is provided by applicable statute) ... following the date of loss[.]"); *Graingrowers*, 711 F.Supp. at 1042 (same as *Wabash*); *First State Ins. Co. v. National Union Fire Ins. Co.*, 1988 WL 6926, *2 (N.D.Ill. 1988) ("No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court ... unless ... commenced within twelve (12) months next after the happening becomes known to the insured, unless a longer period of time is provided by applicable statute.");[6] *Villa Clement, Inc. v. National Union Fire Ins. Co.*, 353 N.W.2d 369, 370 (Wis.App. 1984) (same as *First State*); *Bargaintown, D. C., Inc. v. Bellefonte Ins. Co.*, 426 N.E.2d 469, 470 (N.Y. 1981) (same as *First State*); *Green v. John Hancock Mut. Life Ins. Co.*, 601 S.W.2d 612, 613 (Ky.App. 1980) ("No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished. If any time limitation of this Policy with respect to bringing an action at law or in equity to recover on this Policy is less than that permitted by the law of the state in which the employee resides at the time the disability or other loss on which claim is based commences or is incurred, that limitation is hereby extended to agree with the minimum period permitted by that law."); *Queen Tufting Co. v. Fireman's Fund Ins. Co.*, 239 S.E.2d 27, 28 (Ga. 1977) (same as *PPG*);[7] *General Instrument Corp. v. American Home Assur. Co.*, 397 F.Supp. 1074, 1076 (D.C.Pa. 1975) (same as *PPG*).[8]

---

[6] The court in *First State* denied the insurance company's Rule 12(b)(6) motion to dismiss because it had "not been presented with sufficient evidence to interpret properly the disputed provision." 1988 WL 6926 at *2.

[7] In *Queen Tufting*, the Georgia Supreme Court summarily reversed the Georgia Court of Appeals' affirmance of a summary judgment for the insurance company and held that a general 6-year statute of limitations for contract actions was applicable.

[8] The court in *General Instrument* found the "applicable statute" language to be ambiguous and applied a general 6-year statute of limitations for contract actions.

4

The exceptional case is *M.A. Mortenson Co. v. Indemnity Ins. Co. of North America*, 1999 WL 33911358 (D.Minn. Dec. 23, 1999), involving a "suit against the company" provision that is nearly identical to the disputed provision in this case. That is, the policy provided that an action "will not be barred if commenced within twelve (12) months after the occurrence becomes known to the Insured unless a longer period of time is provided by applicable statute." The *M.A. Mortenson* court found this language was ambiguous. It also determined that even if the provision was intended to establish a contractual limitations period of 12 months, the insured was entitled to the benefit of the applicable statutory period of 6 years. The court stated:

> IICNA argues that the Court should grant its Motion for Summary Judgment because Mortenson's suit was not timely filed in accordance with the suit limitation provision of the insurance policy. Specifically, IICNA claims that the terms of the insurance policy require that any lawsuit for breach of the insurance contract must be brought within twelve months after the claimed loss is discovered. Mortenson responds that summary judgment on this issue is inappropriate because: (1) IICNA has failed to identify the controlling "suit against the company" provision; (2) the controlling "suit against the company" provision does not bar Mortenson's suit; (3) a twelve-month limitations provision is unenforceable under Minnesota law; and (4) IICNA waived the "suit against the company" limitations provision.
>
> The Court must first determine the operative provisions of the insurance policy agreement between the parties. IICNA has identified two "suit against the company" provisions, both of which, it argues, apply. The first provision IICNA identifies is found at Paragraph 20 of the Master Policy. This provision provides:
>
>> 20. SUIT AGAINST THE COMPANY
>>
>> No suit or action on this Policy or any Underlying Policies for the recovery of any claim will be sustainable in any court of law or equity unless the Insured will have fully complied with all the requirements of this Policy or any Underlying Policy. The Company agrees that any action or proceeding against it for recovery of any loss under this

5

> Policy or any Underlying Policy will not be barred if commenced within twelve (12) months after the occurrence becomes known to the Insured unless a longer period of time is provided by applicable statute.

IICNA has also cited the Court to Condition 17 of the Installation Floater Policy, which provides:

> 17. Suit Against Company. No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim. Provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State to be fixed herein.

IICNA argues that the Installation Floater Policy is an underlying policy and is part of the insurance agreement between the parties. Mortenson responds that the Installation Floater Policy is a pre-printed policy jacket that, inter alia, is superseded by the negotiated terms of the Master Policy.

Under Minnesota law, where a conflict exists between the printed clauses in an insurance policy and the typewritten provisions created by the parties, the "ambiguity is to be resolved against the insurer unless the conflict can be removed by giving to each clause a different but reasonable meaning in harmony with the policy as a whole...." *Allied Mut. Cas, Co. v. Askerud*, 254 Minn. 156, 163, 94 N.W.2d 534, 540 (1959). If the written and printed portions of a policy cannot be reconciled by any reasonable construction, the written portions control. See id. Furthermore, Minnesota courts have consistently held that suit limitation provisions are generally not favored and are strictly construed against the party invoking them. *See Henning Nelson Constr. Co. v. Fireman's Fund American Life Ins. Co.*, 383 N.W.2d 645, 651 (Minn.1986).

6

In the instant case, the two "suit against the company" provisions contain two potential conflicts. The first potential conflict concerns the period in which a claim under the policy must be filed. The Master Policy starts with the rule that no suit can be filed against IICNA unless Mortenson fully complies with all of the requirements of the policy. The Master Policy then provides that "any action ... against [IICNA] for recovery of any loss under this Policy or any Underlying Policy will not be barred if commenced within twelve (12) months after the occurrence becomes known to the insured." The Court finds this clause ambiguous because it is capable of more than one reasonable interpretation. Under one reading, the clause acts as an absolute twelve-month limitation provision. The clause can also be read, however, as a guarantee that a suit that would otherwise be barred under the first sentence will not be barred if brought within twelve months after its occurrence. By contrast, the Installation Floater Policy unambiguously provides that "no suit ... shall be sustainable ... unless ... commenced within twelve (12) months ... after discovery by the Insured of the occurrence which gives rise to the claim."

A potential conflict also exists regarding the exceptions to the twelve-month periods. The Master Policy provides that no action will be barred if commenced within twelve months "unless a longer period of time is provided by applicable statute." The Installation Floater Policy states, however, that no suit shall be sustainable unless filed within twelve months unless under the "laws of the State within which this policy is issued such limitation is invalid," in which case the shortest limit of time permitted shall be applied.

Even if the Court were to reconcile the first conflict and conclude that both provisions contain a twelve-month limitation period, it would still find that an irreconcilable conflict exists regarding the exceptions to the twelve-month period. The exception to the twelve-month period found in the Master Policy conflicts directly with the exception found in the Installation Floater policy in that the former allows for suits to be filed at any time within twelve months or the applicable statute and the later allows for exceptions to the twelve-month rule only where a twelve-month limitations period is invalid under Minnesota law. In such an instance of irreconcilable conflict, the provisions of the written policy, as opposed to the pre-printed or standard policy provisions,

> control. *See Allied Mutual Casualty*, 254 Minn. at 163, 94 N.W.2d at 540. Unlike the provisions of the Master Policy, the "suit against the company" provision found in the Installation Floater Policy is part of a set of "Standard Conditions." Thus, the Master Policy controls and a suit against IICNA may be commenced within twelve months or the period of time provided by the applicable statute.
>
> Under Minnesota law, the statute of limitations period applicable to actions for breach of an insurance contract is six years. *See* Minn.Stat. § 541.05, subd. 1(1). IICNA does not dispute that Mortenson filed suit within the six-year statute of limitations period. Thus, Mortenson's suit is timely. Accordingly, the Court will deny IICNA's Motion for Summary Judgment.

*Id.*, at *3-5 (internal citations and footnotes omitted).

Interestingly enough, Zurich's policy also contains a second provision that appears to establish a 12-month limitations period. Thus, it is an express condition of the policy that:

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the insured of the occurrence which gives rise to the claim, provided, however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

(Exhibit C, at 3 (¶ 11).) Also, just like in *M.A. Mortenson*, this provision (simply titled "Suit") is part of Zurich's printed policy, whereas the other provision ("Suit Against the Company") is part of a manuscript form. In this regard, Zurich's policy specifically provides that "[t]he conditions contained in this manuscript form shall supersede those of the printed policy to which this form is attached, wherever the same may conflict." (Exhibit C, at 25, ¶ 30.)

8

Northwest urges me to find a conflict between these two provisions, and, consistent with *M.A. Mortenson*, to invalidate the printed "Suit" provision while interpreting the customized "Suit Against the Company" provision as allowing an action to be filed against Zurich within the time permitted by the general statute of limitations for contract actions (5 years in Nebraska or 10 years in Iowa). Zurich, however, does not even reference the printed "Suit" provision in support of the pending Rule 12(b)(6) motion. Absent any reliance by Zurich upon such provision, I need not decide whether it is nullified by conflicting policy language. Also, I do not believe that the "Suit Against the Company" provision can reasonably be construed as a contractual limitations provision. As written, the provision instead acts as a sort of "discovery rule" for the insured's benefit by permitting an action to be brought within 12 months after the occurrence becomes known (or such longer period of time as may be permitted by State law).[9]

Furthermore, the amended complaint does not conclusively establish, nor have the parties addressed, where the policy was issued. According to the "Suit" provision, the law of the State where the policy was issued will determine the validity of the provision's 12-month limitations period. Deciding where the policy was issued is not a simple matter. "Courts interpreting this word in the context of insurance contracts have held that a contract is not issued until it is received by the purchaser.... However, some courts applying choice of law provisions have assumed that insurance contracts are issued from the domicile of the insurer." *In re Automotive Professionals, Inc.*, 370 B.R. 161, 171-72 (Bkrtcy.N.D.Ill. 2007). Zurich is domiciled in Illinois, but the producer of the policy was AON Risk Services of Missouri, Inc., which was located in St. Louis. (Exhibit C, at 1.) The policy appears to have been delivered to McCarthy either in Missouri or Texas. (*Id.*, at 1-2.) Illinois law permits reasonable contractual limitations periods. *See Atwood*, 845 N.E.2d at 71. Missouri

---

[9] I thus agree with the court in *M.A. Mortenson* that the "Suit Against the Company" provision "allows for suits to be filed at any time within twelve months or the applicable statute." *M.A. Mortenson*, 1999 WL 33911358 at *4. However, I would not characterize this as a limitations period. Rather, it is a grace period.

9

law prohibits any contractual limitations provision. *See* Mo. Ann. Stat. § 431.030. Texas law invalidates any contractual limitations period that is shorter than two years. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.070. The parties, of course, also claim that Iowa law or Nebraska law is controlling.

In summary, even though Northwest does not directly challenge Zurich's premise that the "Suit Against the Company" provision establishes a 12-month limitations period, the premise is faulty because the language of the provision is permissive, not prohibitory. But as Northwest has recognized, there is another policy provision (the "Suit" provision) that does appear to establish a 12-month limitations period. The "Suit" provision also contains a choice-of-law designation, which has been completely ignored by the parties. The contract must be construed as a whole, and additional facts are needed before it can be ascertained whether the contractual limitations period contained in the "Suit" provision is valid and enforceable. Zurich's motion to dismiss therefore will be denied with respect to the limitations defense.

Zurich also contends that it was released from any liability to Northwest when it made payment on a proof of loss that was submitted by McCarthy, which was the general contractor for the construction project and the only "Named Insured" under the builders risk policy.[10] Northwest, a sub-subcontractor on the project, is regarded as an "Additional Insured" under the policy.

In support of the alleged release, Zurich relies upon the following provisions of the policy declarations:

---

[10] In this regard, Northwest alleges: "On or about June 20, 2006, McCarthy submitted a Sworn Statement in Proof of Loss to Zurich . . . [for] $854,038,00 in damage reduced by $500,000 deductible and $100,000 advance payment for an amount claimed of $254,038.00 (the 'June Sworn Statement')." (Amended Complaint (filing 17), ¶ 25.) "Upon information and belief, Zurich made a $254,038.00 payment to McCarthy based upon the June Sworn Statement." (*Id.*, ¶ 26.) A major issue in this case is whether the deductible is $500,000 or only $10,000.

1. A. NAMED INSURED(S):

   McCarthy Building Companies, Inc. and all affiliated and subsidiary companies owned or controlled by the Named Insured as now exist or may hereafter be constituted or acquired. . . .

   B. <u>ADDITIONAL INSURED(S)</u>:

   To the extent required by any contract or subcontract for an INSURED PROJECT*, and then only as their respective interests may appear, any individual(s) or entity(ies) specified in such contract or subcontract are recognized as Additional Insureds hereunder. . . .

   . . .

   All hereinafter referred to as the Insured.

   The first Named Insured shall be deemed the sole and irrevocable agent of each and every Insured hereunder for the purpose of giving and receiving notices to / from the Company, giving instruction to or agreeing with the Company as respects Policy alteration and for making or receiving payments of premium or adjustments to premium.

   2. <u>LOSS PAYEE(S)</u>:

   Loss Payees and Mortgagees, all as their respective interest may appear, shall be as shown on any Project Certificate issued to this Master Policy or ACORD Certificates of Insurance issued by AON Risk Services of Missouri, Inc., copies of which will be forwarded to this Company and kept on file.

   Loss, if any, shall be adjusted with and made payable to the Named Insured and designated Loss Payees & Mortgagees, or as per order of the Named Insured, whose receipt shall constitute a release in full of all liability under this Policy with respect to such loss.

(Exhibit C, at 4.)

11

Zurich does not explain how these provisions automatically bar Northwest's claim, and I conclude as a matter of law that they do not. The "loss payee" clause containing the release language does not apply to an insured party such as Northwest. *See Wometco Home Theatre, Inc. v. Lumbermens Mut. Cas. Co.*, 468 N.Y.S.2d 625, 626 (1983) (a "loss payee" is not itself an insured under the policy; it is merely the designated person to whom the loss is to be paid), *aff'd*, 464 N.E.2d 484 (1984). The other provision merely designates McCarthy as Northwest's agent for notice purposes; such designation does not mean that Zurich's payment of a claim to McCarthy will necessarily prevent Northwest from making a claim in its own right.

For the reasons stated,

IT IS ORDERED that:

1. Defendant's first motion to dismiss (filing 10), filed with reference to the plaintiff's original complaint, is denied without prejudice, as moot.

2. Defendant's second motion to dismiss (filing 18), filed with reference to the plaintiff's amended complaint, is denied on the merits.

January 18, 2008.                    BY THE COURT:

                                              s/ *Richard G. Kopf*
                                              United States District Judge